UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cr-121-01-TWP-KPF |
| ) | |
| DANIEL JOSEPH WARREN, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION TO SUPPRESS**

This case is before the Court on Defendant Daniel Joseph Warren's ("Warren") Motion to Suppress. Specifically, Warren seeks to suppress all evidence obtained during a search of his person and residence on or about April 27, 2011. The parties waived a hearing as the motion raises purely legal questions which do not require an evidentiary hearing. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions of law. For the reasons set forth herein, Warren's Motion to Suppress (Dkt. 31) is **DENIED**.

### I. BACKGROUND

On April 13, 2011, Damien Blakely ("Blakely") was arrested and charged with six counts of dealing a controlled substance, eight counts of possession of a controlled substance, and one driving-related offense. Officers confiscated a total of 141 tablets of various controlled substances, 924.39 grams of marijuana, currency and the title to a motorcycle in the name of "Daniel Warren", from Blakely's residence. While in jail, Blakely engaged in a series of recorded telephone calls with Warren.[1] From these calls, Detective John Howard ("Detective Howard") of the Indianapolis Metropolitan Police Department ("IMPD") learned that Warren

---

[1] Warren was advised that the telephone calls would be recorded and possibly listened to by law enforcement.

and Blakely were neighbors, that following after the search of Blakely's home Warren had retrieved the motorcycle title in his name, from Blakely's residence, and other information. On April 22, 2011, Blakely called Warren to solicit money for his bond. During this conversation, the two discussed the fact that Warren owed Blakely money. Warren explained to Blakely that he was in the process of raising the money he owed, but had no money at that time. He then told Blakely that he "owed Billy $250, but gave him an ounce of 'bud' instead."[2] Catching his own gaffe, Warren immediately stopped speaking and then said, "God damn it I didn't mean to fucking say that."

On April 26, 2011, Detective Howard reviewed the April 22, 2011 conversation between Warren and Blakely. After identifying Warren's full name and address as 1232 South Biltmore Avenue, Indianapolis, Indiana, Detective Howard learned that Warren had a prior criminal history, which included convictions for possession of marijuana, criminal mischief, and burglary. This information, along with Warren's telephone conversations and officer training and experience, led Detective Howard to believe that Warren stored, used, or grew marijuana at 1232 South Biltmore Avenue. Detective Howard then submitted an affidavit for a warrant to search Warren's home. Subsequently, a Marion County Indiana, Superior Court judge approved the warrant that same day.

Detective Howard and other officers of the IMPD executed the search warrant on April 27, 2011 at 1232 South Biltmore Avenue. During the search, officers found two firearms, narcotics, packaging material, and drug paraphernalia. Additionally, Warren possessed marijuana and vicodin on his person. Because Warren had been convicted of a previous felony, he was charged with two counts of felon in possession of a firearm. 18 U.S.C. 922(g)(1).

---

[2] Both parties agree that the term "bud" refers to marijuana. (*See* Dkt. 32 at 3; Dkt. 34 at 2.)

## II. LEGAL STANDARD

In reviewing the issuance of a search warrant, "a magistrate's 'determination of probable cause should be paid great deference by the reviewing court.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). In reviewing the issuance of a search warrant:

> a magistrate's determination of probable cause…should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Norris*, 640 F.3d 295, 300 (7th Cir. 2011) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999)). Instead of focusing on technical aspects of probable cause, the reviewing court should consider all facts presented to the magistrate. *United States v. Lloyd*, 71 F.3d 1256, 1262 (7th Cir. 1995). Finally, "doubtful cases should be resolved in favor of upholding the warrant." *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir.1982); *see also United States v. McNeal*, 82 F. Supp. 2d 945, 951 (S.D. Ind. 2000).

## III. DISCUSSION

Warren moves to suppress all evidence gathered as a result of the search. He contends that the search warrant affidavit lacks probable cause to justify the issuance of the warrant. Furthermore, Warren contends that the "good-faith" exception of the exclusionary rule should not apply because no reasonably trained law enforcement officer could objectively maintain a good-faith belief that probable cause existed; nor could a neutral and detached judge find probable cause.

The Government asserts that the search warrant was supported by probable cause. Alternatively, it argues that the search falls under the "good-faith" exception. *See United States v. Leon*, 468 U.S. 897 (U.S. 1984). The Court will address each of these issues in turn.

A.  **Sufficiency of the Affidavit**

Both parties agree that Warren is entitled to a reasonable expectation of privacy at his home. Therefore, the Government must show sufficient probable cause in order to invade that privacy. Probable cause is a practical, non-technical determination of whether there is a fair probability that evidence of a crime will be found in a particular place given the totality of the circumstances. *United States v. Orozco,* 576 F.3d 745, 748 (7th Cir. 2009) (citing *Gates,* 462 U.S. at 238). It is a common sense standard. *Texas v. Brown,* 460 U.S. 730, 742 (1983).

Warren asserts that Detective Howard's affidavit lacks probable cause to justify the issuance of a search warrant. Warren emphasizes that "the critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). He claims that nothing in Detective Howard's affidavit contains specific facts that suggest that he keeps stores, grows, or uses marijuana in his residence. Warren asserts that even the most prejudicial evidence – the jail call between Warren and Blakely – merely reveals that he delivered one ounce of marijuana to an unidentified man, at an unidentified place, at an unidentified time. Accordingly, he argues that the affidavit insufficiently links any evidence of wrongdoing to the 1232 South Biltmore address. The Court disagrees.

After evaluating the totality of the circumstances, the Court finds that the affidavit provides adequate probable cause supporting the issuance of the search warrant. "A search-warrant affidavit establishes probable cause when it sets forth sufficient evidence to persuade a reasonably prudent person that there was a fair probability that a search will reveal evidence of criminal activity." *United States v. Sewell*, 413 Fed. Appx. 890, 892 (7th Cir. 2011) (citing

*United States v. Curry,* 538 F.3d 718, 729-30 (7th Cir. 2008). To do this, the affidavit "need only allege specific facts establishing a reasonable probability that the items sought are likely to be at the location designated." *United States v. Malin*, 908 F.2d 163, 166 (7th Cir. 1990) (quoting *Rambis,* 686 F.2d at 623).

Detective Howard's affidavit presents sufficient facts to establish probable cause. The affidavit includes evidence that Warren had a relationship with his neighbor Blakely, who Detective Howard knew to be a drug dealer. At time of the search of Blakely's home, Blakely had possession to the title and a motorcycle titled in Warren's name and Warren was attempting to raise money to assist Blakely in posting a bond so that Blakely could be released from jail. The affidavit includes evidence that Warren gave an ounce of marijuana to another individual to repay a debt. Additionally, Detective Howard verified that Warren lived at the 1232 South Biltmore address and that he had two prior convictions for possession of marijuana. Finally, as a basis for supporting the existence of probable cause, Detective Howard articulated his many years of experience as an IMPD officer and knowledge that among other things, "individuals involved in the trafficking of controlled substances often use the residences…where they do not generally reside to conduct controlled substances transactions…" and "individuals involved in the trafficking of controlled substances often work in concert with other individuals in the course and conduct of illegal enterprise."

When considering the affidavit in its totality, it is clear that a magistrate could reasonably infer that Warren keeps or stores marijuana at his home. "Warrants may be issued even in the absence of 'direct evidence linking criminal objects to a particular site.'" *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (citations omitted). Specifically, in the case of drug dealers, it is well established that the magistrate may reasonably infer that "evidence is likely to

be found where the dealers live." *Id.* at 1188 (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)); *see also United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997); *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996); *United States v. Sleet*, 54 F.3d 303, 307 (7th Cir. 1995); *Malin,* 908 F.2d at 166.

Here, there was sufficient evidence for the magistrate to reasonably conclude that Warren is engaged in drug dealing. First, in his telephone conversations with Blakely, Warren admitted to exchanging drugs for debt forgiveness. Second, Warren was previously convicted of possession of marijuana. *See Harris*, 464 F.3d at 740 (holding that prior drug convictions have some corroborative value); *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005) ("[A] record check cannot serve to corroborate [evidence of drug dealing]. Nonetheless, ... it does retain some corroborative value."). This evidence, taken in its totality, could lead a magistrate to reasonably infer that Warren is a drug dealer and thus keeps or stores marijuana at his home. *See United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (holding that it is reasonable for a magistrate to infer that a drug dealer keeps drugs at his home).

Third, there is some evidence that Warren is working in concert with Blakely, a known drug dealer, and he is attempting to raise funds to secure Blakely's release from jail. Detective Howard opined that, based on his training and experience on the behavior and patterns of those involved in the trafficking of controlled substances, the evidence led him to believe that Warren kept drugs at his home. It is well established that the magistrate may take Detective Howard's experience into account when evaluating probable cause.[3] *See Lamon*, 930 F.2d at 1189

---

[3] Warren also argues that the basis for the warrant solely rests on Detective Howard's conclusory inference that "since [Warren] was ready able to get one ounce [of marijuana] to give to the person name Billy," he "keeps, stores, uses or grows marijuana in his residence." *See United States v. Curry,* 538 F.3d 718, 729 (7th Cir. 2008) ("the judge may not rely solely upon 'conclusory allegations'); *United States v. Koerth*, (7th Cir. 2002) ("It is well-established that [courts] may not uphold a warrant issued based solely on conclusory allegations."). The Court concludes that Detective Howard produced more than mere conclusory statements in his affidavit.

("[I]ssuing magistrates are entitled to take into account the experience of officers whose affidavits explain the significance of specific types of information.") (citation and quotations omitted); *see also Orozco,* 576 F.3d at 749. In issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense. *United States v. Sleet,* 54 F.3d 303, 306 (7th Cir.1995).

In the Court's view, the undisputed facts of this case, along with Detective Howard's experience, provided a substantial basis for the issuing judge "to make a practical-common sense decision", that contraband or evidence of a crime would be found in Warren's residence. See *United States v Pless*, 982 F.2d 1118, 1124(7th Cir.1992). The Court finds that Detective Howard's affidavit provides sufficient evidence establishing probable cause for the search warrant.

**B.     The Good Faith Exception**

Even assuming *arguendo* that Detective Howard's affidavit was insufficient to establish probable cause, the good faith exception articulated in *Leon* applies. Under *Leon*, it is inappropriate to suppress evidence obtained pursuant to a later-declared invalid warrant "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Leon,* 468 U.S. at 920; *see also United States v. Elst*, 579 F.3d 740, 744 (7th Cir. 2009). The Seventh Circuit has held that "an officer's decision to obtain a warrant is prima facie evidence that she was acting in good faith." *United States v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006) (internal quotations and citation omitted). A defendant may rebut this good faith exception by presenting evidence that: (1) "the affiant knew that the information provided to the magistrate was false, or if the affiant provided the information with reckless

disregard to its truth or falsity," *Harju*, 466 F.3d at 606-07 (quoting *Leon*, 468 U.S. at 923); (2) "the issuing judge 'wholly abandoned his judicial role' and failed to 'perform his neutral and detached function,' serving 'merely as a rubber stamp for the police,'" *Elst*, 579 F.3d at 744 (quoting *Leon*, 468 U.S. at 914) (citations omitted); (3) the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* (quoting *Leon,* 468 U.S. at 923); or (4) "that the warrant was so facially deficient— *i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officer[] cannot reasonably presume it to be valid." *Harju*, 466 F.3d at 607 (quoting *Leon*, 468 at 923).

To rebut the presumption of good faith, Warren contends that the affidavit is so lacking in indicia of probable cause that an officer's belief in its existence is entirely unreasonable. In support of this assertion, Warren argues that there was absolutely no nexus between 1232 South Biltmore Avenue and the contraband sought. The Court disagrees.

As discussed above, there need not be direct evidence linking the contraband to a particular site. *Lamon*, 930 F.2d at 1188. Here, the detective suspected Warren had been involved with a drug transaction based on the telephone conversations with Blakely, a known drug dealer, that he had traded marijuana to relieve a debt. In addition, the officer knew that Warren had previous convictions for possession of marijuana as well as the knowledge that the residence to be searched was Warren's home. In the Court's view, given this type of information, the executing officer's belief that the warrant was based on sufficient probable cause was entirely reasonable.

Lastly, Warren argues that no truly detached, neutral judge could find probable cause for a search warrant based on the evidence provided in the affidavit. However, as mentioned above,

the judge made reasonable inferences that were in accordance with the law when approving the search warrant. To say that approving the warrant removed him from his neutral disposition is without merit. Accordingly, the Court finds that the good faith exception to the exclusionary rule would also apply in this case.

## IV. CONCLUSION

For the reasons set forth above, Warren's Motion to Suppress (Dkt. 31) is **DENIED.**

**SO ORDERED.**  02/28/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE
barry.glickman@usdoj.gov